Alma Le Pitre, Appellant, v. Chicago Park District, Successor to and Substituted Defendant for South Park Commissioners, Appellee.

Gen. No. 40,284.

Opinion filed March 29, 1939.

WILEY W. MILLS, OSCAR E. CARLSTROM and ROBERT C. PIERCE, all of Chicago, and G. E. NELSON, for appel-

lant; CLARENCE WM. IDARIUS, of Chicago, and ROYCE A. KIDDER, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, and JOHN O. REES, for appellee; JOSEPH B. FLEMING, PHILIP A. LOZOWICK, DAVID JACKER, JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On January 16, 1932, plaintiff filed her declaration in the superior court of Cook county against the South Park Commissioners, a municipal corporation, and charged that on February 2, 1930, she suffered personal injuries while riding in a motor vehicle being driven by her husband in Leif Eriksen drive. Issue was joined, and on May 27, 1936, the case was called for trial. The trial judge on his own motion, ordered the plea withdrawn and proceeded to rule on a demurrer that had theretofore been overruled. He sustained the demurrer and entered judgment for costs against plaintiff. Plaintiff appealed and this court, in *Le Pitre v. Chicago Park District,* 290 Ill. App 345, held that the action of the court was unwarranted. The judgment was reversed and the cause remanded. The case was redocketed and again came on for trial. Plaintiff filed an amended declaration in which the Chicago Park District was substituted as defendant. At the close of plaintiff's evidence, the court directed a verdict of not guilty and entered judgment against plaintiff, to reverse which this appeal is prosecuted.

Leif Eriksen drive, sometimes referred to as the "Outer Drive," is constructed on land formerly covered by the waters of Lake Michigan, and is located wholly within Grant and Burnham Parks, which, at the time of the accident, were under control of the South Park Commissioners, and are now under the control

of the Chicago Park District. The evidence shows that at the time of the accident complained of, there was no light on the lightpost erected on a cement base in the middle of the drive at 30th street, and that there were no lights on the drive for approximately 20 minutes thereafter. There was also evidence that the lightpost in the center of the thoroughfare was hazardous, and that the drive was heavily used as a traffic artery and carried U. S. routes 12, 20 and 41. The base of the unlighted post was approximately 2½ feet in diameter. The car in which plaintiff was riding was driven by her husband. As the car entered Lincoln Park at Diversey avenue, the street lights were on, and as it was driven south on Michigan boulevard, the occupants observed that the streets were lighted all the way to 7th street, at which point, the car turned into the outer drive. There is evidence that the outer drive was dark from 7th to 30th streets, where the accident occurred; that plaintiff and her husband had never been on the outer drive south of Soldier Field; that the automobile in which plaintiff was riding struck against the lightpost and the concrete base where 30th street touches the drive; that both plaintiff and her husband were injured and taken to Michael Reese Hospital, which is located in that vicinity; that plaintiff's injuries were serious and that she remained in the hospital until March 10, 1930. The accident occurred between 5:30 and 5:45 p. m. The lights went on between 5:50 and 6:05 p. m. There is evidence that at the time of the accident, it was dark and misty, and that three lanes of automobiles were moving south at about 20 miles an hour, with their headlights and windshield wipers in use, and that the automobile in which plaintiff was riding was in the inner lane, the one nearest the middle of the street, following another car. Leif Eriksen drive is a 70 foot two-way drive, the west half for southbound traffic and the east half for northbound

traffic. At 31st street there was a viaduct, and the drive, at a point approximately half way between the point of the safety island and 31st street, separated and became two driveways. The west driveway turned at a slight angle to the west and proceeded south under the viaduct at 31st street. That driveway was used exclusively for southbound traffic. The east driveway inclined upward to meet the grade of 31st street and carried traffic northbound on the outer drive as well as southbound traffic desiring to turn west on 31st street. On the safety island opposite 30th street, extended east, there was a sign directing through traffic to the south under the pass and traffic for 31st street to the east drive.

Defendant asserts that the South Park Commissioners constituted a public corporation which was an instrumentality of the State created for the sole purpose of performing essential governmental functions, and hence that it was the duty of the court to direct a verdict for the defendant.

Plaintiff insists that the defendant was a voluntary municipal corporation, having equal dignity within its scope with the city of Chicago, and with exclusive power and authority over the public thoroughfare known as Leif Eriksen drive, and with the exclusive burden to keep and maintain the same in a safe condition for public travel. Plaintiff states that when the defendant undertook to operate an electric light system and furnish the necessary transformers, equipment and fixtures for distributing electric current for lighting a public street, it was acting in a ministerial, private, corporate capacity and became liable in tort for injuries resulting from negligence in the furnishing of such lighting service; also that when the defendant voluntarily assumed and undertook the exclusive control and maintenance of Leif Eriksen drive, it was acting in a corporate, private, ministerial capacity

and was bound to use reasonable care to keep and maintain the said public drive free from dangerous obstructions and in a safe condition for public travel, and that negligence in the performance of such duties required it to respond in damages to the one injured. Plaintiff urges, therefore, that negligence of the servants and agents of the corporation in the discharge of its corporate ministerial functions, renders the municipality liable in tort to the persons injured thereby. The South Park Commissioners was established by the act of February 24, 1869, which provides that the land and premises acquired by the commissioners "shall be held, managed and controlled by them and their successors as a public park, for the recreation, health and benefit of the public, and free to all persons forever, subject to such necessary rules and regulations as shall from time to time be adopted by said Commissioners and their successors for the well ordering and government of the same." (Laws of Illinois 1869, Private, Vol. 1, page 360.) Our courts recognize that in tort liability there is a difference between a municipal corporation proper, such as a city, village or town, and a municipality which is created for the sole purpose of performing functions which are essentially governmental. The West Park Commissioners, a municipal corporation, was organized at the same time and under a similar act as the South Park Commissioners. In *Stein v. West Chicago Park Commissioners,* 247 Ill. App. 479, this court said: "There is a line of decisions, of which several have been cited by counsel in their briefs, to the effect that a city maintaining a public playground or park is liable for the acts of its officers or agents in the course of their employment. There is another line of decisions holding to the contrary. The well-defined distinction between cases of this character necessarily resolves itself into the question of whether or not, in the management and opera-

tion of a public park, a municipal corporation is acting in a private or governmental capacity. Under the powers granted to the West Chicago Park Commissioners, they have no functions or duties other than those expressly provided for by the act, and those duties pertain only to the running and management of its park system. It is a municipality carved out of the city of Chicago, and created by the legislature for a definite and specific purpose, not only for those living within the West Park district but for the public generally, and its duties involved the question of providing outdoor spaces for the inhabitants of the city and State, for the benefit of the general public, and for its health, comfort and enjoyment, and in this regard we believe that its duties bring it well within the definition of a municipal corporation acting for the benefit of the public generally.''

In *Devine v. South Park Commissioners,* 182 Ill. App. 402 (Abst.), the court had before it the record of an action based upon the alleged negligence of the South Park Commissioners in maintaining a swimming pool in Palmer Park, a small park under the jurisdiction of the commissioners. A demurrer was sustained and an appeal followed. The question presented for determination was whether the commissioners, as a corporate body, is liable for negligence in connection with the administration of its powers and duties. We answered in the negative and affirmed the judgment, citing as authority *People ex rel. Bransom v. Walsh,* 96 Ill. 232; *Wilcox v. People ex rel. Lipe,* 90 Ill. 186; *Brandt v. West Chicago Park Commissioners,* 162 Ill. App. 371; *Backer v. West Chicago Park Commissioners,* 66 Ill. App. 507. In the *Backer* case, *supra,* this court said:

''The West Chicago Park Commissioners is a municipal corporation, having certain limited powers granted to it by the legislature. The members of the

Board of West Chicago Park Commissioners are agents, by whom, in part, the people of the State carry on the government. Their functions are essentially political and concern the State at large, although they are to be discharged within the town of West Chicago.''

Plaintiff argues that the Illinois cases on which defendant relies are distinguishable by reason of the fact that Leif Eriksen drive is controlled, operated and lighted by the commissioners as a voluntary act, the same as the city streets are controlled by the corporate authorities of the city. A careful study of the reported cases and of the text books convinces us that the same rule that has been laid down by our Supreme and Appellate Courts as to the liability of municipal corporations for the maintenance and operation of swimming pools, applies to the maintenance and operation of driveways, lighting systems and safety islands by defendant. (See *Gebhardt v. Village of La Grange Park,* 354 Ill. 234; *Love v. Glencoe Park District,* 270 Ill. App. 117.)

Since this case was argued orally, plaintiff, pursuant to leave given, cited as additional authority the recent case of *Costello v. City of Aurora,* 295 Ill. App. 510. William Costello, a boy, was playing in a public park and playground maintained by the city of Aurora. A cannon ball which, with other cannon balls, had been imbedded in concrete on a pyramid, became loose and fell upon his finger, crushing it, so that a part of the finger had to be amputated. The city insisted that in the operation of the park, it was acting in its governmental capacity and was not liable for the injury. The Appellate Court concluded, however, that the city of Aurora, in maintaining the pyramid, was acting in its private corporate capacity, and was liable for the negligence of its employees in not keeping the pyramid in a reasonably safe condition. The view expressed in the *Costello* case is not in accordance with the rule that

has been applied by our courts of review in this State under like factual situations. After reading that opinion we adhere to the statement of law expressed in the preceding paragraph.

Other points have been urged and considered. However, as the point that we have passed upon is controlling, it is unnecessary to extend the opinion. For the reasons stated, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hebel, J., concur.