## The West Chicago Park Commissioners

*v.*

### James C. McMullen *et al.*

*Filed at Ottawa October 31, 1890.*

1. General law—*as distinguished from local or special legislation.* The fact that an act is applicable only to the conditions existing in a single city in the State will not necessarily render it local or special legislation. A law may be general, and yet be operative in a single place. It is not requisite that it should be presently applicable to every person or to every city within the State.

2. Parks—*act of 1879—giving control over streets leading to public parks—whether a special or local law.* The act of 1879, entitled "An act to enable park commissioners or corporate authorities to take, regulate, control and improve public streets leading to public parks," etc., is not a local or special law, within the constitutional provision prohibiting the passage of local or special laws "incorporating cities, towns and villages, or changing or amending the charter of any town, city or village." The act applies to all cities where the conditions exist which it is designed to affect.

3. Same—*streets leading to parks—power of commissioners—a continuing one.* The power given to park commissioners by the act of 1879, "to connect any public park, boulevard or driveway under its control, with *any* part of an incorporated city, town or village, by selecting and taking any connecting street or streets, or parts thereof, leading to such park, provided," etc., is not exhausted by one exercise of it, but is a continuing power, and the commissioners may select a street a second time, even though the street last taken runs parallel with the one first taken. They may select such connection between a park and the city as the public convenience may demand.

4. Same—*park districts—as quasi municipal corporations—and subject to legislative control.* A park district, when established by a vote of the people, becomes a *quasi* municipal corporation for certain purposes, after which the corporation is subject to legislative control. Its powers may be changed, abridged or enlarged, over any portion of the territory within the original limits of the district, without any further vote of the people.

5. So on the adoption of the West Chicago Park act by a vote of the people included in the park district, such district thereby became a *quasi* municipal corporation for park purposes, and the board of park commissioners created by such act became the corporate officers there-

WEST CHICAGO PARK COMRS. *v.* McMULLEN *et al.*    171

Briefs for the Appellant.    Opinion of the Court.

of, and one of the agencies of the State for carrying on the government in respect to the parks in such district.

6. STREETS—*legislative control.* A city holds its streets for the public,—not for its citizens only, but the entire public, of which the legislature is the representative ; and where no private right is invaded, the legislature may vacate a street or highway, or abridge or limit its use, in its discretion.

APPEAL from the Circuit Court of Cook county ; the Hon. M. F. TULEY, Judge, presiding.

Mr. FRANCIS A. RIDDLE, and Mr. JNO. N. JEWETT, for the appellant :

Appellant has full authority to exercise the powers complained of, by virtue of the act of 1879. The word "any," in the act, means "every." *Dubuque Co.* v. *Railroad Co.* 4 Green, 4 ; *McComas* v. *Amos,* 29 Md. 141 ; *In re Stiles' Appeal,* 41 Conn. 329 ; *City Bank* v. *Young,* 43 N. H. 459 ; *Davidson* v. *Dallas,* 8 Cal. 239 ; *Logan* v. *Small,* 43 Mo. 254 ; *People* v. *Clark,* 7 N. Y. 390 ; *People* v. *Hoffman,* 116 Ill. 587.

The act of 1871, and the acts amendatory thereof, confer a like power on the appellant.

Statutes on like subject matter indicate that the power of appellant authorizes the acts complained of.

Mr. FRANCIS ADAMS, also for the appellant :

Appellant had authority to take West Jackson street as a street connecting a part of the city with the park. 2 Starr & Curtis' Stat. 1715 ; 3 id. 413.

Messrs. SMITH & PENCE, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court :

By the legislation of A. D. 1869, known as the "Park acts," the park system of the city of Chicago was inaugurated, and three park districts, respectively called Lincoln, South and West Chicago park districts, were established, under the con-

trol of boards of park commissioners, whose powers and duties. were defined. The act relating to the West Chicago park district authorized the West Chicago Park Commissioners to select and take lands for three parks within such district, and for boulevards or pleasureways, running from the river on the north to the canal on the south, and connecting such parks. (1 Private Laws of 1869, p. 342.) By this act, and a supplemental act passed at the same session, (id. 354,) the northerly and southerly range of the parks, and their maximum area, were fixed. Three parks were located in pursuance of the act,. called Humboldt, Central (now Garfield) and Douglas parks, and a boulevard connecting them was established, as contemplated by said acts. The West Park act was submitted to and adopted by a vote of the people residing within the territory of which the park district was composed, and the district became thereby a *quasi* municipal corporation for park purposes, and the board of park commissioners created by such act became the corporate officers thereof, and one of the agencies of the State for carrying on government in respect of the parks within said West Chicago park district. *The People* v.. *Salomon*, 51 Ill. 37; *Wilcox* v. *The People*, 90 id. 192.

In *Kreigh* v. *City of Chicago*, 86 Ill. 411, (decided in 1877,) it was determined that under the then existing legislation, the city, being vested with the control of the streets for the benefit. of the people at large, could not transfer them to the park commissioners, or absolve itself from the duty of maintaining the same, nor was there power, under the laws then in force,. for such commissioners to take or control such streets. At the next session of the legislature an act was passed, entitled "An act to enable park commissioners or corporate authorities to take, regulate, control and improve public streets leading to public parks, to pay for the improvement thereof, and in that behalf to make and collect a special assessment, or special tax on contiguous property." The first section provided as follows:

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That every board of park commissioners shall have power to connect any public park, boulevard or driveway under its control, with any part of any incorporated city, town or village, by selecting and taking any connecting street or streets, or parts thereof, leading to such park : *Provided,* that the streets so selected and taken, so far as taken, shall lie within the district or territory the property of which shall be taxable for the maintenance of such park : *And provided further,* that the consent of the corporate authorities having control of any such street or streets, so far as selected and taken, and also the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting on such street or streets, so far as taken, shall be first obtained : *And provided further,* that such connection or improvement shall embrace only such street or streets as are necessary to form one continuous improvement."

Section 2 authorizes the levy of taxes and assessments to improve and maintain such streets. By section 3 such park boards are given the same power and control over the streets and parts of streets taken under the act, as they are vested with in respect of the parks and boulevards under their control. Section 5 confers power upon towns, villages and cities to invest such park boards "with the right to control, improve and maintain any of the streets of such city, town or village," for the purpose of carrying out the provisions of the act. (Act of April 9, 1879.) By the act of June 27, 1885, the first section of the act of 1879 was amended, by giving power to the commissioners "to accept and add to any such park, any street or part thereof which adjoins and runs parallel with any boundary line of the same," and by striking out the last proviso of said section.

In the year 1880, in conformity with the original act, the West Chicago Park Commissioners acquired control of West Washington street, and converted it into a boulevard, con-

necting Garfield Park with the city. Subsequently to the conversion of Washington street into such boulevard, by and with the consent of the city, and of the owners of a majority of the frontage thereon, in writing, the park commissioners accepted and assumed control of West Jackson street, in Chicago, from Halsted street to said park, for the purpose of converting it into a boulevard, also connecting Garfield Park with the city. The present bill was brought by appellees, on behalf of themselves and other tax-payers in the town of West Chicago, etc., against the West Chicago Park Commissioners, and prayed for a decree "perpetually enjoining said West Chicago Park Commissioners from paying any moneys for the support of police officers or other employes employed upon the line of West Jackson street, from Halsted street to Garfield Park, and from incurring any debt with respect to the control, management or maintenance of Jackson boulevard, so called, and from preventing general traffic to be carried on along the line of said Jackson boulevard, so called." It is averred and shown that the park commissioners had placed their police in charge of the street, caused its employes to sprinkle and clean the same, and have been and are proposing to pay therefor out of moneys raised by taxation, and have extended the ordinances of said district concerning boulevards, including an ordinance excluding traffic wagons and teams therefrom, over said portion of said street.

No substantial objection is made to the proceedings by which the park commissioners sought to take such portion of Jackson street, if the act referred to is valid, and the power of the park commissioners was not exhausted in the taking and acceptance of Washington street as a boulevard. It is urged, however, that the act is invalid, first, because in violation of article 4, section 22, of the constitution of the State; and second, because the act was not submitted to and adopted by a vote of the people.

The provision of the constitution which it is said this act violates, provides, "that the General Assembly shall not pass local or special laws * * * incorporating cities, towns and villages, or changing or amending the charter·of any town, city or village." It is said that the act authorizes a certain class of cities to divest themselves of the control of their streets; that it relates only to those cities having parks under control of park commissioners, and not to all of such cities, for the reason that it is optional with the city to avail of the provisions of the act or not, and the act is therefore unconstitutional. We do not concur in this view. The act applies to all cities in the State having parks under the control of park commissioners. The law confers the power upon the city authorities to consent, and the park commissioners, upon securing the requisite consent, to assume control of streets, in every place within the State where the conditions exist which it was intended to affect. In *The People ex rel.* v. *Walsh et al.* 96 Ill. 232, it was held that this act of 1879 supplied the necessary legislation to enable the city to invest the park commissioners with control of its streets for park and boulevard purposes. The court, in that case, after stating that it was held in the *Kreigh case, supra,* that the act·of 1874 had no reference to the acquisition of control of established streets of the city by the park commissioners for boulevard purposes, says: "What was there held to be wanting, we have here; and the question is not, have the city and the commissioners power, under the statute,—but, was it competent for the legislature to enact the statute conferring the power upon the city and park commissioners." The validity of the act was thus presented and sustained, and the right of the park commissioners to assume control of the street, upon having obtained the consent of the city authorities and the consent of the majority of the owners of the frontage thereon, was upheld under the act in question.

It would seem that there could no longer be any question of the constitutionality of the act. But it is insisted that the

point was not made in argument or considered by the court in that case. We will not pause to determine whether such was the fact or not. If it be true, as suggested, that the act is applicable to the conditions existing in a single city in the State, that fact does not necessarily render it local or special legislation. It is general in its terms, and applies to all cities of the State which, at the time of its passage, had parks under the control of park commissioners, or that might at any time thereafter so have parks. If, because only a single city had such parks, an act general in its application to all cities would be local or special legislation, no valid act could be passed affecting such existing parks; and it would necessarily result from such holding, that substantially all of the park legislation enacted since the adoption of the present constitution should for the same reason have been held invalid.

An examination of the various park acts (Rev. Stat. chap. 105,) will show that they are equally obnoxious to the objection being considered as the act of 1879; yet the constitutionality of these acts has been repeatedly affirmed by this court. In *The People* v. *Cooper*, 83 Ill. 585, relied upon by counsel, the "City Tax act" was held to be invalid, as establishing dissimilarity in the powers and modes of different cities in the levy and collection of taxes. By that act an option was conferred on the city to levy and collect its taxes by the officers created by that act, or by those provided in and by the general law, and they might change from one to the other at pleasure. No such condition exists here, and the *Cooper case* can therefore have no application.

A law may be general, and yet be operative in a single place. It is not requisite that it should be presently applicable to every person, or to every city, within the State. The general law for the incorporation of cities, towns and villages, until it was adopted by some city, town or village, was inoperative, having no application anywhere. Upon its adoption by a single city it became operative therein, and created, in a sense,

dissimilarity in the organization of that city from every other; and to-day only a portion of the cities of the State have adopted that act, yet it is settled that the act is not in violation of the constitution. So the City Election law, held in *The People* v. *Hoffman,* 116 Ill. 587, to be a valid enactment, applies only to such cities as may adopt the mode of conducting elections therein prescribed. We are not required, by any means, to go to the same length to hold the act under consideration valid. The dissimilarity sought to be avoided, it must be apparent, is not such as will arise by reason of one city having a power to appropriate such of its streets as the public welfare may demand, for pleasureways, under the control of park commissioners, and another city, for the reason that it has no parks, not having such power. As well might it be urged that so much of the City and Village act as authorizes cities, towns and villages "to erect and keep in repair public landing places, wharves, docks and levees," and the like provisions, are invalid, because inapplicable to many, if not to the great majority, of the cities, towns and villages of the State.

It is also insisted, that as the effect of the act is to extend the jurisdiction of the park commissioners over streets connecting the parks with the city not included in the original park acts when adopted by the people, it is necessary to its validity that the consent of the people to be taxed for the improvement and maintenance of such street as a boulevard be first obtained. It is settled by repeated decisions of this court, that the park commissioners are a municipal corporation, vested with power of government, and are agencies of the State for governmental purposes in respect of such parks within their respective park districts. (*The People ex rel.* v. *Salomon, supra; The People ex rel.* v. *Williams,* 51 Ill. 63 ; *South Park Comrs.* v. *Dunlevy,* 91 id. 49 ; *Wilcox* v. *The People,* 90 id. 192 ; *The People ex rel.* v. *Walsh, supra.*) We said in *The People ex rel.* v. *Brislin, supra:* "The park district, when established in pursuance of the act creating it, became a municipality for certain

12—134 ILL.

purposes, and, as such, came within the domain of legislation. The powers of the corporate authorities of this municipality are subservient to the legislative power, precisely as in the case of other municipalities, and are not interfered with by the present constitution."

The consent of the people required is consent to the creation of the new proposed municipality. When such municipality is established, within the general purposes of its creation, and within the territory consenting, it becomes a creature of legislative control, and, with the single exception of the saving of private right, the legislature may, in respect of such agency, as with other municipalities, repeal the law of its creation, curtail its powers, or extend them, within the prescribed territory, at will. By adopting the Park act, the people to be affected have consented to the creation of this municipality, and invested it with governmental powers in respect of parks within the district, and the park commissioners have thereby become, as said in *Wilcox et al.* v. *The People, supra,* "agents, by whom, in part, the people of the State carry on government. Their functions are essentially political, and concern the State at large, although they are to be discharged within the town of West Chicago." If the question was an open one, which, as we have seen, it is not, we should have no hesitation in deciding that it is competent for the legislature, within the original park district, to alter, contract or enlarge the power to be exercised by the park commissioners over any portion of the territory within the original limits of the park district. The city of Chicago holds its streets for the use of the public,—not for its citizens only, but the entire public, of which the legislature is the representative; and when no private right is invaded, the law is well settled that the legislature may vacate a street or highway, abridge or limit its use, in its discretion.

The principal point made, however, seems to be, that appellant, having exercised the power given it by the statute, by selecting and taking West Washington street, its power is

thereby exhausted, and thereafter no street or part of a street could be taken for the purpose of connecting the park with the city or any other part of the city. The power to take streets connecting parks with the city is expressly given, subject only to the consent of the city and of the owners of a majority of the frontage thereon. Appellees, however, contend that the provision of the act, that a street or streets may be taken to connect the park "with *any* part of *any* incorporated city," etc., means some one part or point in such city, only. To so hold would be to adopt a narrow and strict rule of construction. Its effect would be to limit the benefits of the boulevard to one single locality—to some one part of the city—regardless of the public necessity. The language of the statute giving the park board the power "to connect *any* public park, boulevard or driveway under its control, with *any* part of *any* incorporated city, town or village, by selecting and taking *any* connecting street or streets, or parts thereof, leading to such park," very clearly indicates that more than one connection might be made between the park and the city. Any connecting street or streets, or parts of streets, might be taken to connect the park with *any* part of *any* incorporated city. The word "*any*," as applied to the parks under the control of the park commissioners, can not be construed as limiting the power to connect by a street or streets only one park with the city, but it is apparent that the power to connect *any* parks under their control was intended to mean, all parks under their control might be so connected. So, also, the language employed, that they may connect with "*any* incorporated city," does not mean with one incorporated city, necessarily, but was intended to apply to all cities having a park or parks within their territorial limits. So we think, the word "any," as used in the sentence, "with any part of any incorporated city," was intended to confer power to connect the parks under such control with such parts of the city as the public convenience might demand. The word "any" is used in the second sense given by Worcester and Webster,—

*i. e.,* "some; * * * an indefinite number or quantity."
The rapid growth of the city of Chicago, for whose benefit, in
common with the other cities of the State, this act was passed,
would naturally suggest that a demand for increased facilities
to reach these places of public resort would be required, and
the legislature, comprehending the public necessity in that
behalf, unquestionably sought, by the language here employed,
to invest the park commissioners with power to accommodate
the public needs and convenience, by authorizing them, from
time to time, within the territorial limits of their jurisdiction,
to take such streets as might be necessary to that end.    We
are of opinion that the grant of power to take any street or
streets connecting any park under the control of the park com-
missioners with any part of the city, was intended to be a
continuing power, to be exercised as the public convenience
and necessity should demand. *Chicago, Burlington and Quincy
Railroad Co.* v. *Wilson,* 17 Ill. 123.

The first section of the act of 1879 contained the proviso,
"that such connection or improvement shall embrace only such
street or streets as are necessary to form *one* continuous im-
provement."    It might, under that proviso, be urged, that as
the street or streets taken should only be such as were "neces-
sary to form one continuous improvement," the legislature
had in contemplation a single continuous connection.    This
proviso was repealed by the amendatory act of 1885, and the
restriction thereby created, if one was created, was removed.
It can not be doubted that the legislature intended by such
repeal to remove any and all restrictions that might have arisen
upon the construction of the proviso, and to prevent contro-
versy in respect of the right of the commissioners to make
connection between the park and the city.    We do not find it
necessary to further consider the effect of the repeal of such
proviso.    The power to make connections, by means of boule-
vards, between the city and park, must still be by such streets
or parts of streets as will connect the park with some part of

the city by some continuous route or connection. After the selection and taking of the street, the burden of improving and keeping it in repair devolves upon the park district, and it might well be that too heavy a burden would be imposed by a selection of all the streets necessary to a proper connection of the park with the city, at one time. And if power is given to the park commissioners to connect the park with any part of the city, there is nothing in the statute, nor is any reason perceived, why the selection of streets for that purpose should not be made from time to time, as the public necessity may require.

It is urged that the power thus conferred may be abused. This may have been a good reason why the power should not have been conferred at all, or if conferred, why it should have been properly guarded, but is not pertinent as showing that the power was not in fact given. The legislature has provided safeguards against the abuse, by placing the power in the hands of a local municipality, to which the persons interested and to be affected have given their consent, and requiring the consent of the city, the officers of which are elected by and responsible to the people, and likewise the consent of a majority of the owners of the frontage on the street proposed to be converted, before the power shall be exercised. These were regarded by the law-making power as sufficient, and when these prerequisites are conformed to, the power is vested in and may be exercised by the municipality.

It is also insisted that this connection is not with another "*part*" of the city than that with which the park is already connected by Washington boulevard. Jackson street is the fourth street south of Washington boulevard. We can not judicially say that Jackson boulevard will form a connection of the park with the same part of the city that is now connected by Washington boulevard. The authority conferred upon the park commissioners is, in the respect being considered, political in its nature, to be exercised in their discretion.

Courts of equity will not inquire into, or attempt to control the exercise of, such power, except to preserve private right, or prevent gross abuse of it.

It is also urged that the ordinance by which it is sought to take Jackson street is void, and the park commissioners should not be permitted to control and maintain the same as a boulevard, for the reason that thereby the ordinance of the park commissioners excluding traffic wagons and teams therefrom is extended over Jackson street, and it is said that such exclusion is illegal. It will be time enough to determine the validity of that ordinance when some person claiming to be injured by it, or proceeded against under it, shall present the question for determination. There is no pretense that the complainants, here, are thereby deprived of any right or subjected to any burden or penalty.

From the language of the act of 1879, and the amendatory act of 1885, and the nature and character of the power conferred, we are of opinion that the power was not exhausted or extinguished by its exercise in selecting and taking a part of West Washington street as a connection between that portion of Garfield Park lying north of Madison street with a part of the city of Chicago, and that appellant has power, under the statute, to select and take that part of West Jackson street lying between Halsted street and the park, and connecting the park lying south of Madison street with the city, if required for the public convenience or necessity.

The decree of the court below is reversed, and the cause remanded to that court, with directions to dismiss the bill.

*Decree reversed.*