## LEANDER J. McCORMICK

*v.*

## THE SOUTH PARK COMMISSIONERS.

*Filed at Ottawa June 19, 1894.*

516:25 LRA

1. PARK COMMISSIONERS—*powers over parks.* The act of 1869, relating to parks, invested the park commissioners with powers, generally, at least, as full and exclusive in regard to the parks as those conferred upon and possessed by the city council of Chicago in respect to public squares and places in the city, each holding by the same kind of tenure, in relation to the respective subjects matter there referred to, the one clothed with powers identical in extent with those vested in the other.

2. SAME—*control of streets leading to parks.* Prior to the act of 1879, park commissioners were not vested with authority to acquire the management and control of public streets leading to parks. The city held the fee in the streets in trust for the public, and had no power to surrender a street to the park commissioners or other person or body.

3. By this act power was conferred upon park commissioners to take and accept public streets of a city connected with parks, and to assume the management and control of the same, and power was given city authorities to consent thereto, and to surrender the same to the park boards, regardless of where the fee therein might be lodged.

4. SAME—*powers as to encroachments on streets.* After the park commissioners have, by the consent of the city authorities, acquired the control of streets leading to their park, they may prohibit the erection of a balcony which encroaches upon such street, and the city council will have no power to license such encroachment.

5. SAME—*limit and extent of powers.* The authority of the park commissioners ceases at the line on either side of the street. As to the character, height or dimensions of buildings, or of what materials they shall be constructed, along the line of the street, they have no control; but so far as the street proper is concerned, they have the same power as is vested in them of and concerning the parks, boulevards and driveways under their control, subject only to the reservation made by the city in its ordinance giving control of the street.

6. As to encroachments upon the park, and obstructions or purprestures in the streets, boulevards or driveways thereof, the park commissioners are invested with power, ample and complete, to prevent and to remove the same. As to streets leading to parks placed in their control, they may exercise any of the powers conferred by the act of 1869, or which may be by law vested in them, of and concerning parks, boulevards or driveways under their control, so far as applicable.

7. STREETS—*power of legislature to change the control.* The power of the legislature over the public streets, when private rights will not be violated, to change the possession and control of the same, can not be questioned.

8. SAME—*private use of part of street.* The owners of lots bordering upon streets or ways have the right to make all proper and reasonable use of such part of the street for the convenience of their lots, not inconsistent with the paramount right of the public to the use of the street in all its parts.

9. In the absence of legislative direction or municipal declaration of what such rights shall be, what is to be deemed a reasonable and proper use will depend, in a large degree, upon the public usage in like instances and upon the local situation. General use by the lot owners, and acquiescence therein by the public and public authorities, may always be resorted to as evidence of what is a reasonable and proper use, and of the existence of the right.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This was a bill in chancery in the circuit court of Cook county, brought by appellant, to restrain appellee, the Board of South Park Commissioners, from interfering with the construction, by appellant, of a balcony in front of his hotel building located on Michigan avenue, in the city of Chicago. The bill shows the organization of the Board of South Park Commissioners as a municipal corporation under the acts of the legislature of 1869; that the city of Chicago granted, by ordinance of June 23, 1879, to said board, power "to take, regulate, control and improve Michigan avenue, extending from the south line of Jackson street to the south line of Thirty-fifth street;" that said board took possession of said portion of Michigan avenue, and has since regulated, controlled and improved the same; alleges said board to have no rights with reference to said portion of Michigan avenue other than those conferred by the said acts of the legislature and ordinance of the city of Chicago; that the ordinances of the city of Chicago provide that "porticos to any building, extending through one or two stories, may have their plinths

extend four feet over the building line;" that said word "plinth," in said ordinance, means the lowest division on the base of a column, or the plain projecting face at the bottom of a wall immediately above the ground; alleges the ownership in fee of complainant in the land occupied by said hotel building; the erection, many years before, of said building, with the Michigan avenue entrance thereto so constructed, by consent of the city authorities, as to extend two and a half feet over the lot line; that complainant, for convenience, ornamentation, fire escape, etc., proposed to, and did, erect a balcony or portico above the entrance of his said building, resting the same upon the pillars supporting said entrance, the arch of the balcony being supported by iron beams from the wall of the building, said balcony to be sixteen feet above the surface of the street, and projecting out over the lot line some six feet; that said board of park commissioners having refused complainant any permit to make such construction, he proceeded accordingly to erect said balcony. The bill then shows the licensing and acquiescence in, by the city, of kindred uses and occupations of its streets; the granting of permits by said park board to proprietors and owners of other hotel property on said avenue to erect piazzas, balconies, bay-windows, verandas, etc., and alleges that if complainant be prevented from making and having his balcony it will be an unjust discrimination, etc.; that said commissioners have no power to interfere with structures along said avenue unless the highway is obstructed or a nuisance committed *on the surface;* that after said balcony had been erected, as aforesaid, the said park commissioners forcibly tore down and removed it, and that said commissioners threaten to prevent him from restoring the same; prays for injunction restraining said park commissioners from interfering with the rebuilding of said balcony.

Answer was filed by the park commissioners, which admits their possession and control of Michigan avenue between the

points named in the bill, etc.; denies that the city ordinances in regard to projections over street line have any application to said portion of Michigan avenue; avers that when the entrance to complainant's building was originally built, the said avenue was not under the control of said park commissioners; that said complainant, by his agent, applied to the president of the board for a permit to erect a balcony over the building line; that he was answered that the board would not grant any such permit,—that he should make his application in writing, and present it at the next regular meeting of the board, and that no such application was ever made; denies, among other things, that the city of Chicago has granted permission, since the possession and control of Michigan avenue was turned over to said park commissioners, for the construction of any projections or obstructions along the line thereof; that on December 16, 1890, said commissioners were informed, in writing, by the commissioner of buildings of the city, that all buildings on Michigan avenue, between Jackson and Fifty-fifth streets, must be strictly confined to the lot line, and that since then no projecting constructions have been permitted; avers that complainant's balcony is an encroachment upon the highway, and contrary to law, etc., and admits its removal by the direction of the park commissioners, etc.

Hearing was had on bill, answer, replication thereto, and proof, and an order entered, May 4, 1892, denying injunction. On October 17, on motion, leave was granted to file a supplemental bill, which was accordingly done on the following day, stating that subsequent to the filing of the original bill, complainant filed with the commissioner of public works of the city of Chicago, plans and specifications for the erection of a balcony over said Michigan avenue entrance to said hotel building, and applied for a permit to build the same; that afterwards, on September 26, on report of the committee having the matter under consideration, the city council made

and adopted an order granting a permit to complainant, which was duly approved by the mayor, etc.; alleges that in pursuance of said order a permit was granted complainant to erect said balcony according to said plans and specifications; alleges that the legislature had invested the city authorities with power to prescribe the manner of construction of all kinds of buildings within said city, and that said authorities had power to grant said permit; that, notwithstanding said permit, said park commissioners still refuse to allow complainant to build said balcony, threaten to prevent by force the erection thereof, and to tear it down if erected; prays injunction as in the original bill, etc.

Answer was filed, alleging said permit of the city council to be null and void, and admitting that said park commissioners will not allow the erection of said balcony, and will prevent the same, etc.; denies the equities of the bill, etc.

Hearing was had February 16, 1893, on the original bill and answer thereto, and replication, the supplemental bill, answer thereto, and replication, the stipulation of the parties, and proofs, and a decree entered dismissing both the original and supplemental bills for want of equity. The complainant prosecutes an appeal to this court.

Messrs. Pence & Carpenter, for the appellant.

Mr. A. W. Green, for the appellee.

Mr. Justice Shope delivered the opinion of the Court:

This is an appeal from the decree of the circuit court of Cook county, dismissing, for want of equity, appellant's bill, brought to restrain appellees from interfering with the construction of a balcony in front of appellant's hotel building on Michigan avenue, in the city of Chicago. The balcony which appellant proposed erecting would project out from the front of his building some six feet beyond the lot line, at a height

of sixteen feet above the sidewalk, and was to be about thirty-three feet long, and supported by pillars of the archway or entrance, placed fifteen years before, by consent of the city authorities, upon the edge of the street, about two and one-half feet beyond the lot line. Thus, it will be seen, the balcony, when built, would extend and overhang the street three and one-half feet beyond the pillars of the entrance. Appellees persisting in their refusal to consent to or permit the building of the balcony, appellant applied to the city council of the city of Chicago for a license therefor, which was subsequently granted, and issued by the commissioner of public works, purporting to authorize appellant "to erect and maintain a balcony over the entrance of the building at the north-west corner of Van Buren street and Michigan avenue, the same being known as the 'Victoria Hotel,' in accordance with plans on file in the office of the commissioner of public works," which permit, and authority thereunder to construct said balcony, threats of appellees to interfere with and prevent the construction thereof, are set out and alleged in the bill. The answer of appellees to appellant's bill denied that the city council of the city of Chicago had any power or authority to grant said permit, and alleged that the same was null and void, and legally insufficient to authorize the construction of said balcony, etc.; that said South Park Commissioners have refused, and still refuse, to allow such work to proceed, and will prevent the same, and that they refuse to recognize any power in the city of Chicago to issue such permit, etc., upon which issue was joined in due form.

The question presented upon this record is, whether the construction of the balcony in question was a matter over which the South Park Commissioners had jurisdiction and control. If they had, it can not, we think, be seriously questioned that they were authorized to forbid and prevent the erection thereof, and that the city had no authority in the premises, so far as pertained to Michigan avenue between the south

lines of Jackson and Thirty-fifth streets, for it could scarcely be contended, in the absence of the contrary appearing, that the legislature intended to make the powers of the park commissioners and of the city authorities, in respect of subjects matter within the control of either, cotemporaneous and coequal, and thus create dual governments. In case of conflict, as here, the right of control belongs to the one or the other,— not to both. Concurrent powers, where they exist, must be of such nature that they can be possessed and exercised without conflict, or the possession and exercise by the one must exclude the like possession and exercise by the other. It is not pretended that the powers of the park commissioners and of the city authorities of the city of Chicago are concurrent. On the contrary, the contention is sharp, that, on the one hand, it is a matter exclusively within the control of the city authorities, and, on the other, that of the park commissioners.

The act of 1869, (Private Laws, vol. 1, p. 358,) creating the Board of South Park Commissioners, among other things provides, (sec. 2,) that "said board of commissioners shall be a body politic and corporate, and shall have and enjoy all the powers necessary for the purposes of this act." Section 4 provides for the selection, by the commissioners, of certain lands therein described, etc., "which said land and premises, when acquired as provided by this act, shall be held, managed and controlled by them and their successors as a public park, for the recreation, health and benefit of the public, and free to all persons forever," etc. By section 13 it is provided: "The said board shall have the full and exclusive power to govern, manage and direct said park; to lay out and regulate the same; to pass ordinances for the regulation and government thereof; to appoint such engineers, surveyors, clerks and other officers, including police force, as may be necessary; to define and prescribe their respective duties and authority, fix the amount of their compensation, and, generally, in regard to said park, they shall possess all the power and authority

now by law conferred upon or possessed by the common council of the city of Chicago in respect to the public squares and places in said city," etc.

By the section last quoted, the South Park Commissioners, in addition to the powers therein specifically enumerated, shall possess, generally, in regard to the park, "all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago in respect to the public squares and places in said city." Consideration at length of the powers of the city council in the respect mentioned, under the then existing acts, (charter of 1865, and amendments,) is not deemed important. While, in some particulars, differences are to be found, in the extent or manner of exercise of powers conferred upon the council, between the provisions of the charter and the general law of 1872, for the incorporation of cities and villages, now in force in Chicago, they are not material, for, in either case, in so far as such charter provisions might have any bearing upon the question, the powers of the common council were plenary and complete,—that is to say, that under the charter the common council, in respect of public squares and places, had authority and power as ample as that vested in them by the act of 1872; or, in other words, that the fee in such public squares and places being vested in the city in trust for the use of the general public, the common council of the city could improve and control them, and adopt all needful rules and regulations for their management and use. *Alton* v. *Transportation Co.* 12 Ill. 38; *Chicago* v. *McGinn,* 51 id. 266; *Jacksonville* v. *Jacksonville Railway Co.* 67 id. 540; *Carter* v. *Chicago,* 57 id. 285.

By the plain language of the act, it seems clearly to have been the purpose of the legislature to invest the South Park Commissioners with powers, generally, at least, as full and exclusive, in regard to the park, as that conferred upon or possessed by the city council of Chicago in respect to public squares and places in said city, each holding by the same

kind of tenure, and in relation to the respective subjects matter referred to, the one clothed with powers identical in extent with those vested in the other.

In *The People ex rel.* v. *Salomon,* 51 Ill. 37, this court, in passing upon the act of 1869, above quoted from, after holding, as has been done in numerous cases since, under this and other park acts, *(West Chicago Park Comrs.* v. *McMullen* 134 Ill. 170,) that the park commissioners, under the act, became a municipal corporation, vested with power of government, and an agency of the State, for governmental purposes, in respect of the park, the object of their creation being municipal in character, said: "It is argued that this park property belongs to these commissioners as a corporation. This is so by the terms of the act. They hold the fee, but the *usufruct* is in the public." This language was used in deciding the particular point, there raised by counsel, as to whether the park property was subject to taxation, and it was held that it was not, for the reason that, the fee being vested in the park commissioners as a municipal corporation, in trust for the public, such property was not taxable. In view, therefore, of the plain provisions of the act of 1869, and the construction thus placed upon it by this court, there could, it would seem, be no mistake or misconception as to the powers of the park commissioners in relation to the parks acquired under the act.

Prior to the year 1879 no authority was vested in park commissioners of the State enabling them to acquire public streets leading to the parks under their control, *(Kreigh* v. *Chicago,* 86 Ill. 407,) and in the case just cited it was held that the city, holding the streets in trust for the public, had no authority to alien or divest itself of control over them; that authority to surrender a street by the city to the park commissioners was not to be presumed to have been granted by the legislature, and should be made to appear by the clear letter of the law, and such power was there held not to exist, clearly indicating that, with appropriate legislative enactment

to that end, a transfer of a street from the city to the park commissioners might be legally made. In that year, however, the needed legislation was supplied. By the act entitled "An act to enable park commissioners or corporate authorities to take, regulate, control and improve public streets leading to public parks," etc., approved and in force April 9, 1879, it was provided (sec. 1): "That every board of park commissioners shall have power to connect any public park, boulevard or driveway under its control, with any part of any incorporated city, town or village, by selecting and taking any connecting street or streets, or parts thereof, leading to such park," and providing that such street or streets lie within territory composed of property taxable for maintenance of the park, and that consent, in writing, thereto, of the owners of a majority of the frontage of lands and lots abutting on such street, be first obtained, etc. This and section 2, with slight amendment and modification not important here, were reenacted in 1885. (Laws of 1885, p. 225.) By section 3 it is provided : "Such park boards shall have the same power and control over the parts of streets taken under this act as are or may be by law vested in them of and concerning the parks, boulevards and driveways under their control." Section 4 provides for reverter of such streets to the proper city or village authorities in case the same shall pass from the control of the park board, etc. And section 5, that "any city, town or village in this State shall have full power and authority to invest any of such park boards with the right to control, improve and maintain any of the streets of such city, town or village, for the purpose of carrying out the provisions of this act."

By this act, power is conferred upon the park commissioners to take and accept public streets of the city and assume control thereof, and upon the city authorities, power to consent thereto and surrender the same. Regardless of where the fee in the street might, in such case, be found ultimately

to be lodged, the power of the legislature, where private right will not be violated, to change the possession and control of the trust, can not be questioned. (*The People ex rel.* v. *Walsh,* 96 Ill. 232; *West Chicago Park Comrs.* v. *McMullen, supra.*) And, as said in the latter case, when the new municipality is established under the act, it becomes a creature of legislative control, and, with the exception of the saving of private right, the legislature may, in respect of such agency, as with other municipalities, repeal the law of its creation, abridge its powers or enlarge them, within the prescribed territory, at will.

The park commissioners having, therefore, been clothed with power and authority to take and receive public streets, and assume control thereof, leading from the park, the extent of their powers over the same, when a street has come into their possession and control, under the acts, is next to be considered.

In respect of the parks proper, we have seen that, in addition to the other powers specifically mentioned in the act of 1869, their power and dominion, generally, are as ample and complete as those vested in the common council over the public squares and places of the city. If, therefore, such is the power of the commissioners in relation to the park, including, necessarily, the streets, boulevards and driveways therein, (sec. 10, act of 1869,) what power is vested in them over streets acquired under the act of 1879? The answer is obvious, and comes from the act itself: that they are to have the same power and control, in respect to streets taken under the act, as are or may be "vested in them of and concerning the parks, boulevards or driveways under their control,"—that is to say, that having, under the act of 1869, power and dominion, generally, over the park, boulevards and driveways under their control, identical in extent with that vested in the common council over the public squares and places of the city, such park commissioners, in respect of streets acquired by them under the act of 1879, are to exercise the same power

and dominion. It could scarcely for a moment be doubted, that, as to encroachments upon the park, and obstructions or purprestures in the streets, boulevards or driveways thereof, the park commissioners are invested with power, ample and complete, to prevent and remove the same; and if this be so, as we think it must, they are vested with no less power in respect of encroachments upon, purprestures and obstructions in the streets and driveways acquired under the act of 1879. On the contrary, their powers in this regard are the same. And this, we think, is in perfect accord with the legislative intention, if the plain import of the language employed is to obtain. If, as provided in said act of 1869, they have "power to govern, manage and direct" in respect of the park, we conceive no satisfactory reason for holding that the legislature did not intend vesting them with the same power in reference to streets leading thereto, acquired under the later act. Nor do we think any sufficient reason exists why said commissioners in respect of such streets, may not, in so far as they are applicable, exercise any of the powers conferred by said act, or which "may be by law vested in them of and concerning parks, boulevards or driveways under their control."

By ordinance adopted by the city council of Chicago, June 23, 1879, consent was given and granted to said South Park Commissioners "to take, regulate, control and improve" Michigan avenue from the south line of Jackson street to the south line of Thirty-fifth street, the city reserving its rights in relation to the laying of water and gas mains and pipes, and the building and repairing of sewers, tunnels and drains in said street, etc. No question is raised as to compliance with the provisions of the act, but it is insisted by appellant that whatever the authority of the park commissioners over said portion of Michigan avenue, they have no right to interfere with buildings along the line of said avenue which do not interfere with public travel over the surface thereof. Undoubtedly the au-

thority of the park commissioners ceases at the line on either side of the street, and as to the character, height or dimensions of buildings, or of what material they shall be constructed, along the line of the street, they have no control. But so far as the street proper is concerned, they have the same powers as are vested in them of and concerning the park, boulevards and driveways under their control, subject only to the reservation made by the city in the ordinance above referred to. It is, in effect, conceded that the balcony in question, if erected, will be an encroachment over and beyond the line of said part of Michigan avenue. This being so, and the park commissioners having acquired, under said act of 1879, the control of said street, there can, it would seem, be no question as to their power and authority in the premises, and the consequent exclusion of the authority of the city over the same.

It is contended, in argument, that the custom had so far prevailed in the city, of erecting porches, porticos, awnings, cellar-ways, etc., beyond the lot line, that the park commissioners are estopped from preventing the erection, in the absence of an ordinance prohibiting the same, of the balcony in question. It will be unnecessary to determine, here, whether the use of the way above the street in the manner here proposed, would or would not be a reasonable use of the same, in the absence of legislative declaration or municipal license. There is no allegation in this bill of any public usage or custom for the erection and maintenance of encroachments of like character upon the public streets, independently of license or permit from the municipal authorities of the city. The allegation is, and the proof offered by complainant tends to show, that for many years it has been the custom of the city of Chicago to grant permits to build porticos, piazzas, etc., over main entrances to buildings, extending beyond the lot line, and, in like manner, to grant permission for basement entrances upon the sidewalk, etc. But the evidence shows that the lot owner who designed building, or making additions to,

or repairing, the walls outside of his building, was required by the ordinances of the city to submit to the proper officer his plans and specifications of the proposed work. Upon approval thereof a permit or license was granted, thus, in each case, the city retaining control over and direction of the erection of all encroachments upon or over the streets.

Undoubtedly, the owners of lots bordering upon streets or ways have the right to make all proper and reasonable use of such part of the street for the convenience of their lots, not inconsistent with the paramount right of the public to the use of the street in all its parts. (*Smith* v. *McDowell*, 148 Ill. 51, and cases cited.) In the absence of legislative direction or municipal declaration of what such rights shall be, what is to be deemed a reasonable and proper use will depend, in a large degree, upon the public usage in like instances, and upon the local situation. General use by lot owners, and acquiescence therein by the public and public authorities, may always be resorted to as evidence of what is a reasonable and proper use and of the existence of the right. (2 Dillon on Mun. Corp. 521, 553, 585, 794; *O'Linda* v. *Lathrop*, 21 Pick. 292; *Com.* v. *Blaisdell*, 107 Mass. 234; *Nelson* v. *Godfrey*, 12 Ill. 22.) But it is apparent, we think, that question does not arise here, for the reason that the city authorities had at all times, so far as shown, by municipal legislation, assumed and retained the control and direction of all structures intruding upon or over the streets. If, therefore, it be conceded that the course previously pursued by the city authorities is binding upon the park commissioners, a permit from the latter would be required to authorize the construction of the balcony in question. That complainant so understood, is evinced by the fact of his having made application for such permit, first, to the park commissioners, and upon their refusal to grant it, then to the city authorities. It will therefore be unnecessary to discuss whether the proposed balcony was such an obstruction or encroachment upon the avenue as would be a nuisance

34—150 Ill.

*per se*, or such as the municipal authorities, holding the streets in trust for the use of the general public, could not authorize, (*Smith* v. *McDowell, supra; Field et al.* v. *Barling et al.* 149 Ill. 556,) or was such as might be licensed, as being a use of the street not inconsistent with the public right and use.

The complainant having shown no license or right to erect and maintain the balcony proposed to be erected, we are of opinion, irrespective of whether the fee of the avenue was, by operation of law, vested in the park commissioners or not, that an injunction restraining them in the premises was properly denied.

The decree of the circuit court dismissing the bill will be affirmed.

*Decree affirmed.*