THE SOUTH PARK COMMISSIONERS, Appellant, *vs.* THE ILLINOIS TRUST AND SAVINGS BANK, Trustee, Appellee.

*Opinion filed June 29, 1910.*

1. PARKS—*power of park board to take over streets for boulevards.* Under the acts of 1879 and 1895, giving park boards the power to connect any part of a city with the parks under its control and also power to connect any part of the city with any of the boulevards leading to said parks, such boards have power to take over, for improvement, streets or parts of streets connecting with boulevards leading to parks under their control, even though the improvement does not terminate at either end in a park.

2. SAME—*by taking over one street for improvement the park board does not exhaust its power.* By taking over one street for the purpose of making a boulevard connecting a part of the city with a park or boulevard the park board does not exhaust its power to take over other streets to connect other parts of the city, although in the same vicinity, with such parks or boulevards.

3. SAME—*whether park board's improvement is reasonable is not a question for the court.* Whether the proposed improvement of streets by a park board is reasonable in view of the boulevards already established is a question to be determined by the park board, the city council and the majority of the owners of property abutting on such streets, and the Supreme Court will not interfere unless it clearly appears there has been an abuse of the discretion vested in the municipalities.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

TOLMAN, REDFIELD & SEXTON, for appellant.

JAMES C. HUTCHINS, and MAX BAIRD, for appellee.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county sustaining the objection and dismissing the petition for the confirmation of a special assessment for the first improvement by the South Park Commissioners of

a system of streets described in said petition. The only pleadings in the case are the petition and the objections filed by the Illinois Trust and Savings Bank, as trustee.

The South Park Commissioners having obtained the consent of the city of Chicago and a majority of the abutting property owners, instituted proceedings for a special assessment for boulevarding Sixteenth street from the east line of Michigan boulevard to the east line of Prairie avenue; Prairie avenue from the north line of Sixteenth street to the south line of Twenty-ninth street; Twenty-ninth street from the west line of Prairie avenue to the east line of South Park avenue; and South Park avenue from the north line of Twenty-ninth street to the south line of Thirty-third street. The only question raised by the objections presented for our decision is whether the South Park Commissioners have the power, under the statute, to take over and improve the streets in question.

The admitted facts show that Michigan avenue is now a boulevard under the control of said South Park Commissioners, extending from Grant Park south to Fifty-fifth street, which latter is known as Garfield boulevard and also under the control of said South Park Commissioners, which extends east to Washington Park, under the control of said South Park Commissioners; that one block east of Michigan boulevard, and parallel therewith, is Indiana avenue, a street under the control of the city of Chicago, extending from Twelfth street on the north continuously southward across all said east and west streets beginning at Sixteenth street southward to Thirty-fifth street, and thence continuously southward across all intersecting east and west streets for several miles; that Prairie avenue begins at Sixteenth street on the north and thence extends southward continuously to Thirty-first street, intersecting all of said east and west streets between Sixteenth street and Thirty-first street, and thence continuing south several miles; that one block east of said Prairie avenue is Calu-

met avenue, a street under the jurisdiction of the city of
Chicago, which begins at Eighteenth street and thence ex-
tends southward, crossing all east and west streets men-
tioned above as far as Thirty-first street, and thence south
several miles; that one block east of said Calumet ave-
nue is South Park avenue, which begins at Twenty-second
street and thence extends southward, crossing all the above
mentioned east and west streets to Thirty-third street,
where it connects with Thirty-third street boulevard, a
boulevard under the control of the South Park Commis-
sioners, running east and west, the boulevard under the
control of said South Park Commissioners beginning on
South Park avenue at Thirty-third street boulevard and
thence extending south to Thirty-fifth street, where it joins
and connects with Grand boulevard, a boulevard under the
control of the South Park Commissioners, extending south-
ward more than one mile to said Washington Park; that
from a point east of South Park avenue at Twenty-second
street the west shore of Lake Michigan runs from thence
south-eastwardly to a point opposite Thirty-third street,
about one-half mile east of South Park avenue, and that
the territory included between South Park avenue, Thirty-
third street and the said shore of Lake Michigan is all sub-
divided into streets, alleys and building lots and is part of
the city of Chicago, as is all of the territory between Six-
teenth street, Michigan avenue, Thirty-third street and said
shore of Lake Michigan.

It will be seen that the boulevard here involved begins
at Michigan avenue and Sixteenth street and extends east
two blocks on Sixteenth street to Prairie avenue; thence
south on Prairie avenue thirteen blocks to Twenty-ninth
street; thence east on Twenty-ninth street two blocks to
South Park avenue, and thence south on South Park ave-
nue four blocks to Thirty-third street. When completed,
the streets sought to be improved will connect Michigan
avenue with Grand boulevard, which runs south direct to

Washington Park, and will also connect all that portion of
the city of Chicago on Sixteenth street, Prairie avenue and
Twenty-ninth street, and from Twenty-ninth to Thirty-
third street, with Washington Park and by means of Grand
boulevard.

By an act of the legislature approved and in force on
April 9, 1879, it is provided that every board of park com-
missioners shall have the power to connect any public park,
boulevard or driveway under its control with any part of
any incorporated city, town or village, by selecting and tak-
ing any connecting street or streets, or part thereof, lead-
ing to such park. In 1895 another act was passed by the
legislature which extends the powers of park commission-
ers, and authorizes such commissioners to connect any part
of any incorporated city, town or village with any public
park, boulevard or driveway under its control, by selecting
any connecting street or streets, or parts thereof, leading to
such park, boulevard or driveway. The proposed boule-
vard does not terminate at either end in a park. It ends
at Sixteenth street on the north and at Thirty-third street
on the south. It, however, connects at its north end with
Michigan boulevard and at its south end with South Park
boulevard, so that one may reach Washington Park from
any point on the proposed improvement by going either
north or south and travel the entire route on boulevards
under the control of the park commissioners. It is diffi-
cult to see how there can be any serious doubt of the
power of the park commissioners to take over and im-
prove these streets. Having the power to connect any part
of the city with the parks under its control, and also the
power to connect any part of the city with any of the boule-
vards leading to said parks, it is clear that the streets in-
volved in this proceeding are within the powers conferred.

The argument is, that the existence of Michigan boule-
vard renders the proposed improvement unnecessary and
that all the territory in the vicinity of Michigan avenue is

245 — 25

already connected with the park by such avenue. The park commissioners, by taking over Michigan avenue, have not exhausted their power to connect other parts of the city with the park or its boulevards. (*West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170.) In passing on this question in the *McMullen case,* this court, on page 178, said: "The principal point made, however, seems to be, that appellant, having exercised the power given it by the statute, by selecting and taking West Washington street, its power is thereby exhausted, and thereafter no street or part of a street could be taken for the purpose of connecting the park with the city or any other part of the city. The power to take streets connecting parks with the city is expressly given, subject only to the consent of the city and of the owners of a majority of the frontage thereon. Appellees, however, contend that the provision of the act that a street or streets may be taken to connect the park 'with *any* part of *any* incorporated city,' etc., means some one part or point in such city, only. To so hold would be to adopt a narrow and strict rule of construction. Its effect would be to limit the benefits of the boulevard to one single locality—to some one part of the city—regardless of the public necessity. The language of the statute giving the park board the power 'to connect *any* public park, boulevard or driveway under its control with *any* part of *any* incorporated city, town or village, by selecting and taking *any* connecting street or streets, or parts thereof, leading to such park,' very clearly indicates that more than one connection might be made between the park and the city."

It is contended that the ordinance providing for the improvement of the streets in question is unreasonable in view of the boulevards already established and under the control of the park commissioners. This is a question to be determined by the park commissioners, the city council and a majority of the property owners abutting on such streets. This court would not interfere with the exercise of the

discretion vested in the municipalities unless it was made to clearly appear that such discretion had been abused. Such is not the case here.

The circuit court erred in sustaining the objections and in dismissing the petition. The judgment below is reversed and the cause remanded.     *Reversed and remanded.*