# John C. Wallin, Appellee, v. James A. Mitchell, Appellant.

## Gen. No. 6,152.

1. ROADS AND BRIDGES, § 241*—*when instruction on liability for leaving wagon on street misleading.* In an action to recover damages for personal injuries sustained as the result of plaintiff's right leg coming in contact with a wagon and rock left upon a street, but off the graveled portion, while riding on a horse, an instruction that if the jury believed from the greater weight of evidence that the defendant placed, caused, or knowingly permitted his wagon to be placed upon the street, or knowingly permitted and suffered such wagon to remain upon said street as charged in plaintiff's declaration, and that said wagon so being placed or knowingly permitted to remain upon said street was the proximate cause of the alleged injuries to plaintiff, and that plaintiff was injured while in the exercise of due care as the result of such negligence on the part of defendant as charged in plaintiff's declaration in plac-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ing or knowingly permitting said wagon to be or remain upon said street, they should find defendant guilty, *held* erroneous as tending to mislead the jury into believing that if the wagon was within the street lines it was, as a matter of law, a nuisance.

2. MUNICIPAL CORPORATIONS, § 887*—*when fitting entire width of road for travel question for local authorities.* While a whole street is primarily devoted to public use for travel and to that use all other rights must be subordinate, still, whether it is or not necessary to fit the entire width of the road for travel is usually a question for the decision of the local authorities.

3. ROADS AND BRIDGES, § 240*—*when question whether leaving of farm wagon within street lines is nuisance is for jury.* Whether a farm wagon left within street lines is a nuisance and an obstruction to public travel cannot ordinarily be determined as a matter of law, but should be left to the jury under appropriate instructions to find as a matter of fact.

4. TRIAL, § 144*—*when conduct of counsel improper and ground for reversal.* Misconduct of counsel in acting boisterously, coupled with contemptuous treatment of the opposing counsel and witnesses and with disrespect to the court, *held* ground for reversal.

5. ROADS AND BRIDGES, § 239*—*when evidence as to disposition of horse admissible on question of contributory negligence of rider.* In an action to recover damages for personal injuries sustained as the result of plaintiff's leg coming in contact with a farm wagon within the street lines, but off the graveled portion, evidence as to the vicious disposition of the horse and its tendency to balk is admissible on the question of due care of the rider.

Appeal from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 14, 1916.

McDOUGALL & CHAPMAN, for appellant.

BUTTERS & CLARK and H. M. KELLY, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellee, John C. Wallin, and one Pruess, May 18, 1912, after dark, were riding horses along Mill street, a public highway extending through the Village of Utica. Appellee's right leg came in contact with some

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

object at or near the roadside and was broken. He brought this suit against James A. Mitchell, the appellant, charging that the defendant had left a wagon with a rack on the highway, which was a dangerous obstruction to public travel, and the cause of the injury. He had verdict and judgment for $5,000. The defendant appeals.

Utica is a small village, and the street at the place in question has the appearance of an ordinary roadway in the country. It is about sixty-six feet wide, with a graveled roadway twenty to twenty-two feet wide in the center, leaving on each side of the graveled way seventeen to twenty feet within the street limits. Appellant was carrying on quite extensive farming operations in that vicinity, and a wagon and rack was left by one of his servants at the roadside the day before the accident. There is a conflict in the evidence whether it was left four or five feet from the graveled way, or entirely in the field beyond the street line, or at some place between those two points. There were telephone poles at the side of the street, and, as is usual with country roads, the part not graveled did not invite public travel and was not so used.

Appellee's theory supported by evidence introduced by him is that he was riding along the highway in a reasonable manner; that the corner of the hayrack was within three or four feet of the graveled way; that his horse shied and brought his leg against it.

Appellant's theory supported by evidence introduced by him is that appellee and his companion, Pruess, were racing on the highway; that appellee was intoxicated and riding a horse that he knew was vicious and likely to leave the road; that the horse bolted at that place and carried appellee beyond the street line where the wagon was left, or if not beyond the street line to a point so near that line that the wagon was not a danger to public travel. The jury had to determine the questions of appellant's negligence and ap-

pellee's care on very conflicting testimony, and a judgment based on their verdict should not be permitted to stand if there were material errors of law.

The court, at the instance of the plaintiff, instructed the jury: "If they believe, from the greater weight of the evidence, that the defendant placed or caused or knowingly permitted his said wagon to be placed upon the street in question or knowingly permitted and suffered said wagon to remain upon said street as charged in the plaintiff's declaration, and that said wagon so being placed or knowingly permitted to remain upon said street, was the proximate cause of the alleged injuries of the plaintiff, and that the plaintiff, without notice or knowledge of the presence of said wagon there upon said street, and while in the exercise of due and ordinary care for his own safety, was injured on account of said alleged negligence on the part of the defendant as charged in plaintiff's declaration, in placing or knowingly permitting said wagon to be and remain upon said street, then the jury should find the defendant guilty."

In the above instruction "knowingly permitted the wagon to *remain* in the street" is qualified by the words "as charged in the declaration," but "knowingly permitting the wagon to be *placed* upon the street" is not so qualified. If the wagon was within the street lines a very material question was whether it was at such a place as to obstruct travel. The jury were likely to understand from the instruction that if the wagon was within the street lines it was, as matter of law, a nuisance, the instruction should not have been given in that form.

While the whole way is primarily devoted to public use for travel and to that use all other rights may be subordinate, still whether it is or not necessary to fit the entire width of the road for travel must, in the great majority of cases, be a question for the decision of the local authorities. (Elliott on Roads and Streets,

section 491, citing *English v. City of Danville,* 170 Ill. 131.)

Many things may be·authorized by proper municipal authorities, which, to a greater or less extent, interfere with the free and entire use of the street, which, if not so authorized would be deemed nuisances. Custom or usage may sometimes sanction an act which would otherwise be deemed a nuisance and relieve it from that construction, *McDonald v. English,* 85 Ill. 232, 235, citing *Nelson v. Godfrey,* 12 Ill. 20, where the court said on page 23 in speaking of the right of an abutter to excavate under the sidewalk for a coal cellar: "As such a privilege is of great convenience in a city and may, with proper care, be exercised with little or no inconvenience to the public, we think that authority to make such cellars may be implied in the absence of any acts of the corporate authorities to the contrary, they having been aware of the progress of the work." The latter case is cited in *McCormick v. South Park Com'rs,* 150 Ill. 516, 529, where the court said: "Undoubtedly, the owners of lots bordering upon streets or ways have the right to make all proper and reasonable use of such part of the street for the convenience of their lots, not inconsistent with the paramount right of the public to the use of the street in all its parts. (*Smith v. McDowell,* 148 Ill. 51, and cases cited.) In the absence of legislative direction or municipal declaration of what such rights shall be, what is to be deemed a reasonable and proper use will depend, in a large degree, upon the public usage in like instances, and upon the local situation. General use by lot owners, and acquiescence therein by the public and private authorities, may always be resorted to as evidence of what is a reasonable and proper use and of the existence of the right." In *Gregsten v. City of Chicago,* 145 Ill. 451, 461, it is said: "It is the general doctrine that municipalities, under the power of exclusive control of their streets, may allow any

use of them consistent with the public objects for which they are held.'' Authorities are collected in *Sears v. City of Chicago*, 247 Ill. 204, 216, where it is said: ''Whatever may be the rule in other jurisdictions, the law is settled in this State that a city may, under the power of exclusive control of its streets, allow any use of them which is not inconsistent with the public objects for which they are held.'' In *People v. Marshall Field & Co.*, 266 Ill. 609, 623, the court, citing authorities said: ''That the owner of abutting premises may make a reasonable use of the street to convey goods from his premises, and for that purpose may place temporary obstacles to travel, such as skids, across the sidewalk.'' It is clear from the above authorities that whether a farm wagon left within street lines is a nuisance and obstruction to public travel cannot ordinarily be determined as matter of law, but should be left to the jury under appropriate instructions to find as a matter of fact.

Appellant well says that the court erred in not permitting him to prove the character of the horse that appellee was riding after permitting appellee to testify to its disposition. If the horse was vicious and liable to bolt to the side of the street and appellee knew it before he attempted to ride him at that time and place, that fact had some bearing in the consideration of appellee's exercise of care in the manner he was riding.

What, however, seems to us the most serious objection is that appellee's counsel conducted themselves improperly in the trial of the cause. There was much tumult and confusion in the introduction of the evidence, and while ordinarily that is a matter in which the judgment of the trial court should not be reversed because he is in much better position than the reviewing court to know the provocation for doing the things complained of, and the effect upon the jury, still, in this case, the record shows a failure of appellee's coun-

sel to observe rules necessary to a fair investigation of a controversy in a court of law that should not be excused. During the examination of witnesses one of appellee's attorneys said "bosh" to a ruling of the court against him. At another time he, without apparent provocation, told opposite counsel to "shut up." Much occurred that might well be expected from an attorney trying a law suit in the mood that these expressions indicate. His associate was not free from criticism in the manner in which he cross-examined witnesses. The court, at times, admonished counsel with little effect. They excuse themselves here by suggesting the zeal that overcomes attorneys in the quest of truth and desire to suppress falsehood. Good trial lawyers often see their own side of the case very strongly, and in the heat of a jury trial are not able to judge calmly of what the fact is, and what the law is. Witnesses testify to the facts as they understand them, perhaps mistakenly. Opposing counsel contend for the law as they understand it. The jury listen to the facts. The court rules on the law. All parties are entitled to courteous treatment, and nothing is more likely to defeat the ends of justice in the trial of a case than boisterous conduct of counsel, coupled with contemptuous treatment of opposing counsel and witnesses, and disrespect to the court. The fact that counsel for appellee in this case are experienced lawyers and courteous gentlemen, ordinarily conducting themselves with propriety in the trial of cases, should not have deterred the trial court from enforcing order in the court room, and should not influence us to refuse to let a judgment stand that there is much reason to suppose was influenced by such misconduct.

Other errors are assigned and argued. They are of minor character, and, if errors, will probably not occur on another trial. For the reasons above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*