THE CITY OF CHICAGO, Plaintiff in Error, *vs.* THE PITTS-
BURG, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY
COMPANY, Defendant in Error.

*Opinion filed October 26, 1909.*

1. MUNICIPAL CORPORATIONS—*power of legislature to give park boards control over streets.* Where private rights are not involved the legislature has power to provide that jurisdiction over a connecting street leading to a park may be transferred from the city to the board of park commissioners for the purpose of improving such street.

2. SAME—*a city loses jurisdiction over street when park board takes control.* Where a city, by ordinance, consents that a park board shall take jurisdiction of a street leading to a park and the park board accepts the provisions of the ordinance and proceeds to improve the street, the city loses jurisdiction over such street for the purpose of its improvement and repair.

3. SAME—*what does not amount to re-assumption of jurisdiction by city.* The fact that after a street leading to a park has been regularly transferred to and improved by the park board the city enters into negotiations with a railroad company whereby a viaduct is constructed and paid for partly by the city and partly by the company at a point in such street within the limits of park board's jurisdiction, does not amount to a re-assumption by the city of control over the street at such point, such as gives it power to repair or compel the repair of sidewalks on viaduct approaches.

4. SAME—*what is not a test of city's right to repair or compel repair of sidewalks.* The fact that a city, if it assumes to repair a sidewalk on a viaduct approach in a street under the jurisdiction of a park board, may, if it makes the repairs in a negligent manner, be liable to a person injured in consequence thereof, does not establish that it had the right to make such repairs or compel them to be made.

5. SAME—*when a city cannot recover cost of sidewalk repairs from railroad company.* Where a city which has lost control over a street under the jurisdiction of a park board assumes to repair the sidewalks of the approaches to a viaduct in such street over the tracks of a railroad company which has refused to comply with the city's notice to make such repairs, the payment of the cost of the repairs by the city must be treated as voluntary, and it cannot recover the amount thereof from the railroad company.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, (CHARLES M. HAFT, and GEORGE W. MILLER, of counsel,) for plaintiff in error.

LOESCH, SCOFIELD & LOESCH, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of assumpsit commenced by the plaintiff in error, the city of Chicago, in the municipal court of Chicago, against the defendant in error, the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, to recover $3189.18 alleged to have been paid out by the city of Chicago on behalf of said railway company in repairing the sidewalks over the approaches to the viaduct which leads over the tracks of the defendant in error and other railway companies in the city of Chicago at Ogden avenue. The plea of the general issue was filed and the case was heard by the court without a jury, which resulted in a finding and judgment in favor of the railway company, which judgment was affirmed by the Appellate Court for the First District, and a writ of error has been sued out of this court by the city of Chicago to review said judgment.

The attorneys of plaintiff in error, in the reply brief filed by them in this court, say: "As we view this case there is but one legitimate subject for discussion in this court, and that is, whether or not the city of Chicago has authority, jurisdiction or control over the sidewalks for the expense of the repair of which it is seeking to procure a judgment in this case;" and we agree with plaintiff in error's counsel in that regard to this extent, at least, that if

the city of Chicago did not have authority, jurisdiction or control over the sidewalks for the expense of the repair of which it is seeking to procure a judgment, other questions discussed in the briefs of the parties filed in this court become immaterial. The question of the authority, jurisdiction and control of the city over said sidewalks, which involves its right to make said repairs, may as well, therefore, be first determined, and if it shall be held that the city had no authority, jurisdiction or control over said sidewalks which authorized it to make said repairs, if it paid out any money for repairs upon said sidewalks the payment thereof would be voluntary on its part, and it could not be recovered by it from the defendant in error. In order to determine that question it will be necessary to state briefly the facts found in this record.

In 1885 (Laws of 1885, p. 225,) the General Assembly passed an act which provided, in substance, that every board of park commissioners should have power to connect any public park under its control with any part of any incorporated city, town or village by selecting and taking any connecting street or streets, or any part thereof, leading to such park, and that the said board of park commissioners should have power to improve, maintain and repair such street or streets, and to levy taxes or special assessments for the purpose of paying for such improvement, maintenance or repair; that at the time of the passage of said enactment and the passage of the ordinance hereinafter referred to, Ogden avenue, at the place where it is intersected by the railroad tracks of defendant in error, was eighty feet in width; that on January 17, 1887, the city council of the city of Chicago passed an ordinance consenting that the board of West Chicago Park Commissioners should "take, regulate, control and improve * * * the center seventy feet" of a portion of said Ogden avenue, which includes the part of said avenue covered by the viaduct over the approaches of which the sidewalks in ques-

tion were erected, and which ordinance was accepted by the board of West Chicago Park Commissioners on January 24, 1887; that after the passage and acceptance of said ordinance the board of West Chicago Park Commissioners caused Ogden avenue to be widened to a width of one hundred and fifty feet by adding thirty-five feet to each side thereof; that after said avenue was widened it was known as Ogden avenue boulevard and connected the city of Chicago with Douglas Park; that the center of the original eighty-foot street is the center of the present one hundred and fifty-foot street; that the sidewalks which were repaired were in no part constructed upon the original eighty-foot street, but are situated entirely upon the property acquired by the board of West Chicago Park Commissioners for the purpose of widening said street; that after said street had been widened there were negotiations between the officials of the plaintiff in error and the defendant in error, the result of which was that the Ogden avenue viaduct, with its approaches, including the sidewalks here involved, were constructed and paid for in part by the city of Chicago and in part by the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company; that in 1904 the sidewalks in question became out of repair, and on October 31, 1904, the city council of the city of Chicago passed an ordinance requiring the defendant in error, and certain other railways using the tracks laid in Ogden avenue beneath said viaduct, to repair said sidewalks; that the railway companies named in the ordinance were notified to make such repairs; that they having neglected and refused so to do, the city made the repairs; that the railroads named in the ordinance having refused to pay for said repairs after they were made, this suit was begun against all of said railway companies, and that afterwards the suit was dismissed by the city as to all of the defendants except the defendant in error.

The doctrine is well established in this State that where private rights are not involved the legislature may provide

2 42 — 3

for the transfer of the jurisdiction to the board of park commissioners of streets similarly situated to Ogden avenue. (*McCormick* v. *South Park Comrs.* 150 Ill. 516; *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 id. 204; *West Chicago Park Comrs.* v. *Sweet,* 167 id. 326; *Aldis* v. *South Park Comrs.* 171 id. 425; *City of Chicago* v. *Carpenter,* 201 id. 402.) In *People* v. *Walsh,* 96 Ill. 232, on page 249, it was said: "In cases of property dedicated to public uses there are, most usually, two classes of interests affected: one that of the public generally, and the other that of private parties. * * * The legislature represents the public. So far as concerns the public, it may authorize one use to-day and another and different use to-morrow. If the new use affects private rights, proceedings for condemnation may have to be invoked, but so far as it affects the public alone, its representative, in the absence of constitutional restraint, may do as it pleases." And in *McCormick* v. *South Park Comrs. supra,* on page 525, the court say: "Regardless of where the fee in the street might, in such case, be found ultimately to be lodged, the power of the legislature, where private right will not be violated, to change the possession and control of the trust cannot be questioned." And in the *Carpenter case,* on page 407, it was said: "It seems clear from the repeated decisions of this court that the legislature, where private rights will not be violated, has power to transfer the jurisdiction over streets and avenues situated similarly to this avenue, [Cottage Grove avenue, which adjoins Washington Park upon the east,] from the city of Chicago to the park commissioners, and empower said commissioners to improve the same."

It would seem clear, therefore, that upon the passage of the ordinance of January 17, 1887, consenting that the board of West Chicago Park Commissioners should take jurisdiction of Ogden avenue at the point now covered by said viaduct, and the acceptance of the provisions of that

ordinance and the action of the board of West Chicago Park Commissioners in widening the street from a street eighty feet wide to one hundred and fifty feet in width, and changing its name to Ogden avenue boulevard and making it a connection from the city to Douglas Park, Ogden avenue at that point passed under the jurisdiction and control of the West Chicago Park Commissioners, and that the city had thereafter no jurisdiction or control over said avenue at the point where said viaduct and approaches were constructed.

In the *Carpenter case* the board of park commissioners had taken possession of a street adjoining Washington Park under authority conferred upon it by law, and it was held that the city of Chicago had lost the right to improve the street by special assessment and that the authority to so improve the avenue had become vested in the board of park commissioners. It was also held in that case that dealing with said avenue by the park commissioners by constructing a curb and sidewalks on one side of the avenue and constructing catch-basins in the street was evidence of the assumption by the park board of jurisdiction and control over said avenue. It seems, however, to be thought by the plaintiff in error that the fact that the viaduct over Ogden avenue was constructed, in part, by the city subsequent to the passage of said ordinance and its acceptance by the railway company, amounted to a surrender of jurisdiction over said avenue by the park board, and that the city thereby acquired jurisdiction over the avenue beneath the viaduct and its approaches, and that it was by reason of that fact authorized to repair the sidewalks thereon and to recover from the defendant in error the amount paid out for such repairs. In *West Chicago Park Comrs.* v. *Sweet, supra,* which involved the right of the board of West Chicago Park Commissioners to levy a special assessment to improve certain streets under the control of said board of commissioners, the contention was made that the board of

West Chicago Park Commissioners, by reason of the construction, in part, by the city of the Ogden avenue viaduct and its approaches, had abandoned jurisdiction over Ogden avenue within the limits of the Ogden avenue viaduct and approaches thereto and that the city had assumed control thereof. It was, however, held to the contrary. In that case, on page 331, it was said: "One reason suggested in support of the judgment dismissing the petition is, that appellants had abandoned that part of Ogden avenue within the limits of the viaduct and approaches thereto and had permitted the city of Chicago to resume control, so as to make a break or hiatus in the street as a park boulevard. This does not appear from the record, but the evidence shows, and the fact was conceded, that appellants were in possession and exercising control and jurisdiction over the streets granted. The fact that the railroad company and the city of Chicago had erected a viaduct, which was accepted, used and controlled by appellants as a part of the boulevard, did not oust them of jurisdiction or destroy the general plan of which the viaduct became a part."

We think, therefore, that the contention of plaintiff in error that the city has resumed authority, jurisdiction and control over the said viaduct and its approaches is without force, and are of the opinion the authority, jurisdiction and control of said viaduct and approaches passed to and remained under the control of the board of West Chicago Park Commissioners as a part of Ogden avenue boulevard.

It is said, however, that the viaduct is under the control of the city to such an extent that in case a person should be injured while crossing said viaduct or while walking upon said sidewalks the city would be liable for damages to such injured party, and personal injury cases are cited to sustain the position that the city may be liable for an injury occurring upon a sidewalk under its control although legally it may not be bound to maintain a sidewalk at the particular point where the injury takes place, and it

is urged if the city is to be held liable for negligence in permitting said sidewalks to be and remain out of repair it should be permitted to repair them and recover the cost of repairs from the defendant in error. Whether the city would be liable in case of an injury to a person while crossing said viaduct or using said sidewalks by reason of the same being out of repair need not be determined, as that question is not now before the court. The determination of that question either way, however, would not fix the rights of the parties to this litigation. In this case the question is, does the primary liability to repair said sidewalks, as between the city of Chicago and the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, rest upon the railway company?—and in case the railway company neglects to perform that duty, can the city perform it by repairing said sidewalks and then sue and recover from the railway company the cost of such repairs? It would seem clear if the city had surrendered its jurisdiction and control of the viaduct and its approaches to the board of West Chicago Park Commissioners and that board had incorporated said viaduct and its approaches into its park system, that the power to repair said viaduct and sidewalks built upon its approaches would not rest in the city but that such obligation would rest upon the board of West Chicago Park Commissioners, and if the city was not bound to repair the sidewalks upon said approaches, it could not, by so doing, create a liability against the defendant in error and require it to reimburse it for the expense of such repairs, although it might, if it voluntarily undertook to make such repairs and made them in a negligent manner, be properly held liable for an injury to one who traveled upon the viaduct or sidewalks located upon the approaches. We think, therefore, the authorities cited by the city to show that it, under some circumstances, might be liable to a person using said sidewalks for damages because they were out of repair does not establish a liability in this case against defendant.

We think the viaduct and its approaches are under the authority, jurisdiction and control of the board of West Chicago Park Commissioners, and that the city cannot recover of the defendant in error the amount of money which it has expended in making repairs upon the sidewalks located upon the approaches to said viaduct, which are not under its authority, jurisdiction and control but are under the authority, jurisdiction and control of the board of West Chicago Park Commissioners.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*