570 . APPELLATE COURTS OF ILLINOIS.

Lewis v. Drainage Comm'rs of Drainage D. No. 1., 161 Ill. App. 570.

## Joseph Lewis et al., Appellees, v. The Drainage Commissioners of Drainage District No. 1, Appellants.

1. DRAINAGE—*section 43 of Farm Drainage Act construed.* The Farm Drainage Act is independent of and should be construed without reference to the Levee Act, and section 43 of the Farm Drainage Act expressly authorizes the formation of one drainage district within the boundaries of another existing drainage district.

2. DRAINAGE—*jurisdiction of corporation exclusive.* There cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same power, jurisdiction and privileges.

3. DRAINAGE—*when contract void.* A contract for work made by a drainage district is void which provides for the doing of work upon a system of drainage over which it has no jurisdiction and those doing work under a contract with a drainage district are bound at their peril to take notice of the invalidity of such contract.

Assumpsit. Appeal from the Circuit Court of Edgar county; the Hon. W. B. SCHOLFIELD, Judge, presiding. Heard in this court at the November term, 1910. Reversed and remanded. Opinion filed May 26, 1911.

H. S. TANNER and ECKHART & MOORE, for appellants.

FRANK T. O'HAIR and JAMES W. & EDWARD C. CRAIG, for appellees.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

The issues involved in this action in *assumpsit* were tried by the court without a jury. From a judgment in favor of the plaintiffs for $4,245.10 this appeal is prosecuted by the defendants.

The declaration consists of the common counts, in which it is averred that the defendants were indebted to the plaintiffs in the sum of $5,000 for digging, repairing and cleaning out the branch known as the Gilkey branch in the system of drainage of said drain-

age district, and for work, services and material furnished in so doing, and a special count which sets out a contract between the parties, whereby the plaintiffs agreed to dig, repair and clean out the branch known as the Gilkey branch in the system of drainage of said drainage district No. 1, theretofore laid out and constructed which branch extended from the main ditch in the southwest quarter of section 26, township 15, in a northeasterly direction through sections 26 and 24, in township 15, and sections 19 and 18, in township 16, which would require the excavation of about 17,000 cubic yards of earth, the said ditch to be repaired with a dredge boat according to certain plans and specifications, in consideration of which the defendants agreed to pay to the plaintiffs the sum of twenty-five cents per cubic yard for each and every yard excavated. It is then averred that the plaintiffs had performed the work required by the contract and in accordance therewith, and that the defendants had refused to pay them for the same or any part thereof.

In addition to the plea of general issue, the defendants filed two special pleas, averring generally that they were not authorized by law and had no authority in law, to make the contract in question; that the same was entered into for the purpose of digging, repairing and cleaning out the main ditch and a branch thereof situated within the boundaries of another and independent drainage district, a municipal corporation created for the purpose of local and more minute drainage of the lands within said district, designated as drainage district No. 4 in Young America township, having commissioners of its own, and exercising the same powers and jurisdiction that were conferred upon the commissioners of said district No. 1. That after the organization of said district No. 4, the commissioners of said district, after acquiring a right of way, extended the lower terminus of the Gilkey ditch to include that portion of the same that lay below its boundaries, whereby its jurisdiction thereover became

572    APPELLATE COURTS OF ILLINOIS.

Lewis v. Drainage Comm'rs of Drainage D. No. 1., 161 Ill. App. 570.

exclusive; that said extension beyond the boundaries of district No. 4 was the same ditch described in the second count of the declaration; that ever since such time, said commissioners of district No. 4 had had, and still had, exclusive jurisdiction and control over the said ditch and such extensions, and that the defendants had no jurisdiction over the same whatever, wherefore they had no power to enter into said contract, and that the same was void, and not binding upon said district No. 1. Demurrer was sustained to such pleas, and the defendants elected to abide by the same.

The material facts involved in the controversy, briefly stated, are the following: Drainage district No. 1 of the town of Young America, was originally organized in 1879, and included within its boundaries nearly 20,000 acres of land. The system of drainage adopted by the commissioners consisted of a main ditch and several branches. One of such branches was known as the Gilkey branch, about 4,900 feet in length and running northeasterly to the north line of the land of one Gilkey. On September 21, 1900, the commissioners of highways of the town of Young America, who were *ex officio* drainage commissioners of said town, organized an independent district under section 43 of the Farm Drainage Act, composed of lands lying partly in district No. 1 and partly without the boundaries of said district and designated as drainage district No. 4. The system of drainage adopted consisted of a main ditch, beginning at the northeast corner of section 19, and running in a southwesterly direction to the south line of the southwest quarter of section 24, and ending at the north line of the Gilkey land—the southern boundary of district No. 4; and from the lower boundaries of the district the main ditch was extended beyond the boundaries of district No. 4 to the main ditch of district No. 1, for the purpose of cleaning and enlarging the Gilkey branch of district

No. 1. Such extension was constructed by district No. 4 in 1902, and paid for by assessments levied upon the lands of said district. District No. 4 was still in existence as an independent district, and had elected annually an entirely different set of commissioners from district No. 1.

During the year 1907, the defendants as commissioners of district No. 1 entered into the contract here involved with the plaintiffs, for the cleaning out and repairing of what is therein designated as the "Gilkey branch." Through error, misunderstanding or ignorance on the part of the commissioners, such contract provided for the cleaning and repairing of that part of the ditch which had formerly been within district No. 1, but which was then claimed to be under the dominion of district No. 4. After the plaintiffs had begun work at the upper end of the ditch within the limits of district No. 4, the mistake was discovered and the defendants notified the plaintiffs to stop work, and that they would refuse to pay for any work done outside of their district. Thereupon the plaintiffs ceased work, and thereafter repeated efforts were made by all concerned to arrive at some agreement or arrangement whereby the work should be completed and paid for. Nothing was accomplished however, and the plaintiffs finally resumed and completed the work, without any further authority from the defendants and without their acquiescence or consent. They then made a demand upon the defendants for payment for the entire work, according to the terms of the contract. The defendants paid them for the lower 4,900 feet, but refused to pay for the remainder of the work, whereupon this suit was instituted.

Upon the trial, the defendants offered to show, under the general issue, a rescission of the contract, and an acquiescence therein by the plaintiffs, but the court held that such proof was incompetent under the general issue, and that the defense should have been raised

574    APPELLATE COURTS OF ILLINOIS.

Lewis v. Drainage Comm'rs of Drainage D. No. 1., 161 Ill. App. 570.

by special plea. The defendants also sought to show that the ditch described in the contract was not a part of the system of drainage of district No. 1, but was a part of No. 4, and that the Gilkey branch of district No. 1 extended only 4,900 feet from the main ditch. The court held that this defense also should have been raised by special plea.

The position of counsel for appellees that one drainage district cannot legally be formed within the boundaries of another existing drainage district, in support of which they cite People v. Lease, 248 Ill. 187, is unwarranted either by the statute or the authorities construing the same. The drainage districts under consideration in the case cited were organized under the Levee Act, and what is there said has no application to districts formed one within the other under section 43 of the Farm Drainage Act, which expressly authorizes such to be done (Rev. Stat. 1909, 911), and which act, by the terms thereof, must be construed as an independent act. There can be no doubt under the statute and authorities of the legal existence of district No. 4, or as to its power to construct an independent drainage system for local and more minute drainage. People v. Scott, 132 Ill. 427; People v. Swigart, 130 Ill. 618. The two districts were therefore distinct municipal corporations within the same territory, except as to the lands lying wholly without the boundaries of the main district. It is well-settled that there cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same power, jurisdiction and privileges. Dillon Mun. Corp., 184; Park Commissioners v. Chicago, 152 Ill. 392; Bishop v. People, 200 Ill. 33; Chicago v. Ry. Co., 242 Ill. 30; People v. Lease, *supra.* Under section 43, district No. 4, upon its organization, acquired jurisdiction of all work within its boundaries, to the exclusion of district No. 1. District No. 1 therefore had no power to levy a tax on the land included within the limits of district No. 4 for the payment of this work.

The plaintiffs were bound at their peril to take notice of the authority and power of the defendants to enter into the contract which they seek to have enforced. District No. 4 being an independent district, and the commissioners having the same powers that the commissioners of main districts have, they were authorized to clean and enlarge the Gilkey branch of district No. 1, by virtue of the power conferred upon them by section 41 of the Farm Drainage Act. The demurrer admitted that the commissioners of district No. 4 did lay out, as a part of this system of drainage, the improvement of the Gilkey branch of district No. 1, and acquired the right of way over the same, and constructed the improvements. That ditch then became, by operation of law, one of the ditches of district No. 4, and it passed under its dominion and control, as much so as any ditch within district No. 4.

The special pleas, in substance, presented a valid defense, and the court erred in sustaining a demurrer to the same. In this view it will be unnecessary to specifically determine the propriety of the rulings of the court upon the evidence and propositions of law submitted by the defendants.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*